UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ELISANDRO RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-324 |
| | § | |
| GILEAD SCIENCES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Plaintiff Elisandro Rodriguez (Rodriguez) seeks compensation for permanent heart damage he allegedly suffered as a result of participating in a clinical trial for the treatment of hepatitis C (HCV) with the pharmaceutical, Sofosbuvir/Ledipasvir (S/L). D.E. 1-2. He has sued the drug manufacturer, Gilead Sciences, Inc. (Gilead), as well as physician, Eric Lawitz (Lawitz), and the facility where the clinical trial took place, the Texas Liver Institute, Inc. f/k/a Alamo Medical Research, Ltd. (TLI). *Id*. The case was originally filed in the County Court at Law No. 3, Nueces County, Texas. Gilead timely removed the case on the basis of diversity jurisdiction, reciting that Lawitz and TLI, both of which are non-diverse, were improperly joined. D.E. 1. Lawitz and TLI timely consented to the removal. D.E. 3.

Before the Court is Rodriguez's Motion to Remand (D.E. 14) in which he does not dispute the diverse citizenship of Gilead or the amount in controversy exceeding $75,000.00, both of which are admitted in his petition. D.E. 1-2. *See generally*, 28 U.S.C. § 1332. Neither is there any dispute that Lawitz and TLI are citizens of Texas and

non-diverse from Rodriguez. Thus, the sole issue before this Court is whether Lawitz and TLI were improperly joined. Gilead argues that the only available cause of action against Lawitz and TLI is a health care liability claim that Rodriguez has expressly disclaimed. Because the Court agrees with Gilead, the motion to remand (D.E. 14) is DENIED.

On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* The strict construction rule arises because of "significant federalism concerns." *See generally, Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941).

"The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*). The removing party proves improper joinder by demonstrating: (1) actual fraud in the pleading of jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court. *See Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 532 (5th Cir. 2006) (citing *Travis v. Irby,* 326 F.3d 644, 646–47 (5th Cir. 2003)); *see also Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir. 2005). Only the second method is at issue here.

The motion to remand must be granted unless "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.

1999).  There is no question that, prior to Rodriguez's participation in the S/L clinical trial, Lawitz was his physician, treating him for HCV.  There is also no question that the clinical trial of S/L was offered to Rodriguez as a treatment for HCV.  While the allegations with respect to TLI are sparse, its liability is predicated upon being the facility where the S/L clinical trial took place as to Rodriguez.

Rodriguez claims that, during their physician-patient relationship, Rodriguez and Lawitz developed a separate fiduciary relationship, which was breached when Lawitz exploited Rodriguez's trust by delivering him as a test subject to Gilead for Lawitz's personal gain.  And when Lawitz recruited Rodriguez for the S/L clinical trial, he did so only in his capacity as a businessman and agent of Gilead and not as Rodriguez's physician, thus triggering negligence and product liability claims.  Likewise, according to Rodriguez, TLI was not a facility delivering health care but a test lab used in the process of gaining approval for Gilead's manufacture of S/L.  In sum, Rodriguez suggests that the clinical trial was not a process for determining the health risks and benefits of S/L but, instead, was a formality to be disposed of expeditiously in order to obtain FDA approval for a product.

Rodriguez states in his pleading and his motion to remand that "Plaintiff is not bringing any claim for failure to provide adequate healthcare."  D.E. 14-1, p. 2.  Plaintiff argues that he can bring his claims for breach of fiduciary duty, negligence, and product liability because he is not relying on any doctor-patient relationship or the exercise of any medical standard of care.  *Id*. at 7.  He argues that such claims do not fall within the confines of a "health care liability claim," which is statutorily defined as

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code (Texas Medical Liability Act; TMLA) § 74.001(a)(13).

Whether a claim is a "health care liability claim" under the TMLA depends on the facts at issue, not the theory pled. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). "When the underlying facts are encompassed by provisions of the TMLA in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims." *Id.* at 193-94. The Fifth Circuit has enforced this interpretation of Texas law. *Hall v. Dow Corning Corp.*, 114 F.3d 73 (5th Cir. 1997). In *Hall*, claims for fraud, negligence, failure to warn, deceptive trade practices, and representations that the surgical implantation of a medical device was a clinical trial were all treated as health care liability claims. *Id.*

The definition of "health care liability claim" appearing in the TMLA and its predecessor, the Texas Medical Liability and Insurance Improvement Act (MLIIA),[1] has been held to encompass claims arising from physical placement of exercise equipment, fraudulent misrepresentations inducing a release, fraudulent recordkeeping, and even sexual assault on a patient. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (duty to protect patient against sexual assault); *Fort Duncan Medical Center, L.P. v. Martin*, 2012 WL 3104527 (Tex. App.—San Antonio 2012, no writ)

---

[1] TEX. REV. CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1992).

(mem. op.) (fraud and conspiracy in altering medical records); *Covenant Health System v. Barnett*, 342 S.W.3d 226, 231-32 (Tex. App.—Amarillo 2011, no writ) (placement of aerobic step too close to a wall during a free heart screening causing loss of balance); *Boothe v. Dixon*, 180 S.W.3d 915, 921 (Tex. App.—Dallas 2005, no writ) (fraudulent misrepresentations). It also encompasses the facts of this case.

Rodriguez suffered from a medical illness, HCV, and sought treatment from Lawitz. Lawitz, a physician, and TLI, a health care institution, constitute "a health care provider or physician" under the TMLA. § 74.001(a)(12), (23). Lawitz and TLI offered a clinical trial related to treatment of HCV with S/L. They were responsible for administering that treatment and monitoring Rodriguez's medical condition. Rodriguez claims that the treatment worsened his medical health. These allegations relate to "health care, or safety or professional or administrative services directly related to health care" as governed by TMLA § 74.001(a)(13).

The TMLA governs all of Rodriguez's claims, regardless of the legal theory he seeks to impose on them. Because he has disclaimed any action under the TMLA, he has waived the only type of action available to him in proceeding against Lawitz and TLI. Therefore, Lawitz and TLI are improperly joined and the Court disregards their Texas citizenship and holds that this Court has diversity jurisdiction over the claims made against Gilead and the case was properly removed. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 817 (5th Cir. 1993) (the court disregards the citizenship of parties who are improperly joined).

Because of the Court's ruling on Rodriguez's inability to maintain a claim against Lawitz and TLI, the Court does not reach Gilead's alternative request that any viable claims against Lawitz and TLI be severed and remanded pursuant to Federal Rules of Civil Procedure 19 and 21 for the reason that Lawitz and TLI are not necessary parties to the action against Gilead.

For the reasons set out above, the Motion to Remand (D.E. 14) is DENIED.

ORDERED this 6th day of November, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE